IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DR. ROSE C. MERCHANT          :

    v.                        :   Civil Action No. DKC 12-3552

PRINCE GEORGE'S COUNTY,       :
    MARYLAND, et al.          :

**MEMORANDUM OPINION**

Presently pending and ready for review in this employment retaliation case is the motion to dismiss or, in the alternative, for summary judgment filed by Defendants Prince George's County, Maryland ("the County"); Rushern Baker; and Pamela B. Creekmur. (ECF No. 17). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, Plaintiff Dr. Rose C. Merchant's amended complaint will be dismissed for lack of subject matter jurisdiction.

I. **Background**

In July 2005, the County hired Plaintiff as a G35 Deputy Director in its Department of Corrections. The County discharged Plaintiff on February 21, 2008, but re-hired her August 4, 2008, and transferred her to the Division of Addictions and Mental Health within the County's Health

Department. The County terminated Plaintiff again on December 19, 2011.

This action marks the second time Plaintiff has sought judicial relief against the County and its employees. On February 4, 2009, Plaintiff filed a lawsuit in this court captioned *Rose C. Merchant v. Prince George's Cnty., et al.*, No. DKC-09-0256 ("the First Lawsuit"). In the First Lawsuit, Plaintiff asserted claims for gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and pay discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206(d). Plaintiff based her discrimination claims on allegations that she was compensated less than her male peers for performing the same job, and based her retaliation claim on allegations that the County fired her in February 2008 without cause after she complained of the allegedly disparate differences in pay. On February 9, 2010, this court granted summary judgment in favor of the County on all claims asserted by Plaintiff in the First Lawsuit. *See Merchant v. Prince George's Cnty.*, No. DKC-09-0256, 2010 WL 503046 (D.Md. Feb. 9, 2010). On June 21, 2011, the United States Court of Appeals for the Fourth Circuit affirmed this court's decision in an unpublished, *per curiam* opinion. *See Merchant v. Prince*

*George's Cnty.*, 436 F.App'x 218, 2011 WL 2451528 (4th Cir. June 21, 2011).

On June 5, 2012, Plaintiff filed the instant lawsuit ("the Second Lawsuit") in the Circuit Court for Prince George's County, Maryland. (ECF No. 2). According to the amended complaint, the County and its employees "continued their campaign of reprisal" against Plaintiff immediately after she filed the First Lawsuit in February 2009. (ECF No. 3 ¶ 37). Specifically, the County allegedly placed Plaintiff in a new position where she had no substantive duties. In addition, Plaintiff alleges that she repeatedly applied for promotions to positions "for which she was more than qualified," but was denied each time. Plaintiff further alleges that, on December 19, 2011, the "campaign of reprisal finally culminated" when the County again terminated her employment, this time for "allegedly punching in to work in the wrong County building – a County building in which her office was located." (*Id.* ¶ 38). The amended complaint in the Second Lawsuit asserts a single count for retaliation under Title VII. (*Id.* ¶ 40). The amended complaint asserts that Plaintiff "timely filed a Charge of discrimination with the Equal Employment Opportunity Commission [("EEOC")] alleging retaliation" on October 5, 2011, and then filed the Second Lawsuit within ninety days of receiving a right-to-sue notice. (*Id.* ¶¶ 11-12).

On December 3, 2012, Defendants removed the Second Lawsuit to this court. (ECF No. 1). On December 14, 2012, Defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment. (ECF No. 17). In support of their arguments under Rule 12(b)(1), Defendants present evidence that contradicts the factual allegations in the amended complaint regarding the timing and nature of Plaintiff's contacts with the EEOC. For example, Monica R. Jackson, an investigative support assistant with the EEOC Baltimore field office, avers that, based upon her review of the investigative file for Charge No. 570—2012-00066, "a minimally sufficient charge of discrimination was docketed . . . on January 10, 2012." (ECF No. 17-5, Jackson Aff. ¶ 5). Thus, according to Defendants, Plaintiff submitted "an unverified charge information or intake form on January 10, 2012," as opposed to October 5, 2011. (ECF No. 17-1, at 6). Ms. Jackson further avers that, on January 10, 2012, the EEOC drafted a formal charge of discrimination using EEOC Form 5 and mailed it to Plaintiff for her review, signature, and return. (ECF No. 17-5, Jackson Aff. ¶ 6). Ms. Jackson states that the investigative file also reflects that an EEOC Form 131, titled "Notice of Charge of Discrimination," was mailed to the County. (*Id.* ¶ 4). That document, dated January 12, 2012, advised the County that "[n]o action is required by you at this time" and that "[d]uring

the investigative process a perfected charge will be forwarded to you for a completed response." (ECF No. 17-4, at 3). Additionally, the box for "Enclosure – Copy of Charge" was left unchecked. (*Id.*). Ms. Jackson represents that, consistent with its procedures, the EEOC issued Plaintiff a right-to-sue notice and closed its file on March 7, 2012, after thirty (30) days passed without Plaintiff returning a verified formal charge. (ECF No. 17-5, Jackson Aff. ¶¶ 7-8).

In her opposition (ECF No. 21), Plaintiff contests Defendants' timeline of events *via* her own declaration and exhibits. Specifically, Plaintiff maintains that she filed an intake questionnaire with the EEOC alleging retaliation on October 5, 2011. (ECF No. 21-2, Merchant Decl. ¶ 2). The copy of the intake questionnaire submitted by Plaintiff is undated and unsigned, and consists of five total pages. (*See* ECF No. 21-2, Merchant Decl. Attach., at 4-8).[1] The first three pages contain pre-printed questions with handwritten answers. (*Id.* at 4-6). In response to the question asking "[w]hat happened to you that you believe was discriminatory?," Plaintiff responded "[s]ee attachment" and submitted a two-page, typed addendum that provides, in relevant part, as follows:

> Since the filing of my EEOC Charge [in 2005]

---

[1] All citations to court documents in this Memorandum Opinion refer to CM-ECF pagination.

5

> and [the First Lawsuit], I have been
> subjected to on-going retaliation, including
> but not limited to depletion of duties,
> ostracism and repeated denial of promotions.
> In fact, I have applied for over 10
> promotions in positions for which I am more
> than qualified. I have not been considered
> for a single position. Moreover, I believe
> that each of these positions was filled by
> less qualified male colleagues.

(*Id.* at 7-8). According to Plaintiff, the EEOC was later notified of her December 2011 termination as additional evidence of retaliation. (ECF No. 21-2, Merchant Decl. ¶ 2). Plaintiff avers that, after she filed her intake questionnaire, she did not receive any documents from the EEOC, nor did anyone from the EEOC contact her to investigate her allegations. Plaintiff recounts that, after several months of hearing nothing from the EEOC, she contacted the agency directly. (*Id.* ¶ 4). Despite purportedly being told by an EEOC representative that she would receive a formal charge for her review and signature, Plaintiff insists that the only document she ever received from the EEOC was a right-to-sue notice issued on March 7, 2012. (*Id.*).

## II. Standard of Review

Although Defendants' motion implicates several different standards of review, their argument that Plaintiff failed to exhaust her administrative remedies is, as discussed below, dispositive. Because a Title VII plaintiff's failure to exhaust administrative remedies deprives a federal court of jurisdiction

over such claims, *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300-01 & n. 2 (4th Cir. 2009), Defendants' motion will therefore be construed pursuant to Rule 12(b)(1).

The plaintiff always bears the burden of demonstrating that subject matter jurisdiction properly exists in federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). When, as here, "the challenge is made, not to the sufficiency of the jurisdictional allegations, but to the underlying facts supporting those allegations, a trial court may go beyond the allegations of the complaint and may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Kim v. United States*, 609 F.Supp.2d 499, 504 (D.Md. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)) (internal quotation marks omitted). Nonetheless, a Rule 12(b)(1) motion that challenges the facts upon which jurisdiction is premised should be analyzed pursuant to similar standards: "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

**III. Analysis**

Defendants contend that Plaintiff's amended complaint should be dismissed for lack of subject matter jurisdiction because she never filed a verified charge with the EEOC and therefore failed to exhaust her administrative remedies. (ECF No. 17-1, at 6-7; ECF No. 22, at 1-4). Plaintiff does not dispute that, prior to initiating the Second Lawsuit, she never filed a verified, formal charge of discrimination with the EEOC. (*See* ECF No. 21-1, at 5-7). Plaintiff nonetheless advances two arguments as to why she should be deemed to have satisfied Title VII's exhaustion requirements: (1) the intake questionnaire she allegedly submitted to the EEOC in October 2011 qualifies as a "charge"; and (2) the EEOC never contacted her to conduct an investigation or sent her a formal charge for signing. (*Id.*). Even when the record is construed in the light most favorable to Plaintiff, her responses are unavailing.

"Before a plaintiff may file suit under Title VII . . . , he is required to file a charge of discrimination with the EEOC." *Jones*, 551 F.3d at 300 (citing 42 U.S.C. § 2000e-5(f)(1)). The statute does not explicitly define the term "charge," *see Edelman v. Lynchburg Coll.*, 535 U.S. 106, 112 (2002), but does set forth certain guidance about the exhaustion process. With respect to timing, Title VII establishes "two possible limitation periods for filing a discrimination charge

with the EEOC." *Jones*, 551 F.3d at 300 (explaining that the basic limitations period is 180 days after the alleged unlawful employment practice, but can be extended to 300 days in certain circumstances). The timely filing of an administrative charge "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *see also Jones*, 551 F.3d at 300 n. 2.

With respect to form, Title VII mandates that a charge be "in writing under oath or affirmation." 42 U.S.C. § 2000e-5(b); *see also* 29 C.F.R. § 1601.9 (establishing that a Title VII charge "shall be in writing and signed and shall be verified"). EEOC regulations define "verified" to mean "sworn to or affirmed before a notary public, designated representative of the [EEOC] or other person duly authorized by law . . . , or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3. An unverified document that satisfies the other substantive requirements for a charge can be cured by a later-filed charge that is verified, in which case the verified charge relates to the filing date of the unsworn charge. *See* 29 C.F.R. § 1601.12(b); *Edelman*, 535 U.S. at 118 (upholding relation back). Although EEOC regulations characterize the failure to verify a charge as a "technical defect," 29 C.F.R. §

9

1601.12(b), the Fourth Circuit has held that compliance with Title VII's verification requirement is "mandatory," *Balazs v. Liebenthal*, 32 F.3d 151, 156 (4th Cir. 1994). In other words, "failure to comply with [the verification requirement] is fatal to an action seeking relief under Title VII." *Id.*

Finally, with respect to substance, Title VII requires that a charge "contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5(b). Pertinent EEOC regulations state that a charge shall contain the following information: (1) the full name, address, and telephone number of the person making the charge; (2) the full name and address of the person against whom the charge is made; (3) a clear and concise statement of the facts, including relevant dates, regarding the alleged unlawful practices; (4) if known, the approximate number of employees of the respondent; and (5) a statement disclosing whether any proceedings regarding the alleged unlawful practices have been commenced before a state or local agency. 29 C.F.R. § 1601.12(a). Notwithstanding these specific requirements, however, the EEOC regulations also contain a catchall clause, which provides that "a charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Id.* § 1601.12(b). In addition to satisfying

the EEOC regulations, a filing must also "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee" before it can be deemed a charge. *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008).[2]

Contrary to Plaintiff's arguments, the intake questionnaire she purportedly submitted to the EEOC in October 2011 fails to establish that she exhausted her administrative remedies for two separate reasons. First, Plaintiff's intake questionnaire

---

[2] In *Holowecki*, the United States Supreme Court addressed whether an intake questionnaire constitutes a charge for purposes of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). EEOC regulations explaining what must be including in an ADEA "charge" are very similar to those promulgated pursuant to Title VII. *See* 29 C.F.R. §§ 1626.8(a)-(b) (establishing that an ADEA charge "should contain" five specific types of information, but then qualifying these requirements by stating that a charge is "sufficient" if it meets the requirements of Section 1626.6, *i.e.*, if it is "in writing and . . . name[s] the prospective respondent and . . . . generally allege[s] the discriminatory act(s)"). In *Holowecki*, the Supreme Court deferred to the EEOC's position that the regulations' criteria are not exhaustive, meaning that "not all documents that meet the minimal requirements of § 1626.6 are charges." *Holowecki*, 522 U.S. at 397. The Court went on to adopt the EEOC's position that "the proper test for determining whether a filing is a charge is whether the filing, taken as a whole, should be construed as a request by the employee for the agency to take whatever action is necessary to vindicate her rights." *Id.* at 398. Numerous courts in this district and elsewhere have applied *Holowecki*'s objective test in cases arising under Title VII. *See, e.g.*, *Grice v. Balt. Cnty.*, No. JFM 07-1701, 2008 WL 4849322, at *4 n.3 (D.Md. Nov. 5, 2008) (collecting cases).

cannot be deemed a charge because its substance does not satisfy the *Holowecki* standard. In *Holowecki*, the plaintiff's intake questionnaire, as supplemented by a detailed six-page affidavit, constituted a charge because (1) it met the minimum requirements established by EEOC regulations; and (2) the last page of the affidavit included a request to "[p]lease force Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment created within their application of *Best Practice/High-Velocity Culture Change*." *Holowecki*, 552 U.S. at 405. Notably, however, the *Holowecki* Court observed that "[w]ere the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action" because, *inter alia*, "not every completed Intake Questionnaire" is a charge. *Id.* Thus, under *Holowecki*, intake questionnaires do not constitute charges absent some indication that the filer is requesting action by the EEOC. *See, e.g.*, *E.E.O.C. v. Freeman*, No. RWT-09-2573, 2010 WL 1728847, at *6-7 (D.Md. Apr. 27, 2010) (neither the intake questionnaire or attachments thereto constituted a charge because none of the documents evinced an intent by the plaintiff to invoke the EEOC's investigative and remedial process); *King v. Lowe's Home Ctrs., Inc.*, AW-08-3393, 2009 WL 3681686, at *4-5 (D.Md. Nov. 2, 2009) (intake questionnaire that provided general facts concerning the

12

plaintiff's claims did not constitute a charge where it did not state the relief sought or ask the EEOC to take any action, but instead requested an interview with the EEOC to explain further the plaintiff's allegations); *Grice*, 2008 WL 4849322, at *4 (intake questionnaire that was not supplemented with additional information or requests did not constitute a charge).

Here, although Plaintiff's intake questionnaire appears to satisfy the requirements of 29 C.F.R. § 1601.12(b) (*i.e.*, it contains a written statement that identifies the relevant parties and generally describes at least some of employment practices Plaintiff asserts were retaliatory), nowhere does Plaintiff explain what relief she is seeking or request any action by the EEOC. Moreover, the introduction on the intake questionnaire specifically states "REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law" (ECF No. 21-2, Merchant Decl. Attach., at 4), providing notice to Plaintiff that the intake questionnaire itself was not, in fact, a charge. Thus, even crediting Plaintiff's contention that she filed her intake form in October 2011, that filing cannot be deemed a charge.[3]

---

[3] It appears that the version of the intake questionnaire submitted by Plaintiff here omits the final two pages of the standard intake form used by the EEOC. On the version of the form posted on the EEOC web site, a question on the final page asks the filer to choose between two options, one of which says

13

Even assuming, however, that Plaintiff's intake questionnaire did include some sort of request for remedial action as required under *Holowecki*, nothing indicates that Plaintiff ever satisfied Title VII's verification requirement. Neither the three-page intake questionnaire nor the two-page addendum thereto is signed (let alone verified). (*See* ECF No. 21-2, at 4-8).[4] In many cases, of course, where a plaintiff's intake questionnaire constitutes a charge under *Holowecki* but is unverified, the verification of a later-filed formal charge of discrimination can relate back to cure the deficiency. *See, e.g.*, *Dixon v. Shasta Beverages, Inc.*, No. WDQ-12-0569, 2012 WL 4774808, at *4 (D.Md. Oct. 5, 2012) (although the plaintiff did

---

that "I want to file a charge of discrimination and I authorize the EEOC to look into the discrimination I described above," and one of which says "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC." *See* EEOC Intake Questionnaire, http://www.eeoc.gov/form/upload/Uniform-Intake-Questionnaire.pdf (last visited May 21, 2013). At least one court in this district has held that the objective test established by *Holowecki* can be satisfied where a filer choses the former option. *See Enoch v. Becton, Dickinson & Co.*, No. ELH-11-2251, 2012 WL 2371049, at *6 (D.Md. June 22, 2012). Judge Hollander's reasoning in *Enoch* is persuasive, but there is no need to address whether it applies here. Plaintiff bears the burden of establishing that she exhausted her administrative remedies, and the version of the intake questionnaire she submitted simply cannot be deemed a charge.

[4] Likewise, even if Plaintiff mistakenly omitted the last two pages of her intake questionnaire in filing it with the court, the signature blank on the standard EEOC intake form is not accompanied by any statement that the filer is signing under penalty of perjury.

not file a sworn, formal charge until after the limitations period expired, that charge was deemed to relate back to a timely filed but unsworn intake questionnaire that satisfied *Holowecki*). Here, however, Plaintiff does not contend that she filed any additional documents with the EEOC, verified or otherwise, after submitting her intake questionnaire on October 5, 2011. Thus, there is no basis for concluding that Plaintiff's intake form satisfies Title VII's verification requirement. *See, e.g.*, *Santiago v. Giant Food, Inc.*, No. DKC-00-903, 2001 WL 118628, *3 (D.Md. Feb. 5, 2001) (given that the Fourth Circuit "strictly observe[s]" the verification requirement, an unverified intake questionnaire that was never amended by a verified, formal charge is "simply . . . not enough").

To the extent Plaintiff is contending that the verification requirement should be equitably waived because the EEOC failed to send her a formal charge for review and signature, she points to no authority supporting such a result. Where a *pro se* plaintiff diligently pursues her Title VII claim but nonetheless misses a filing deadline because she relied on misinformation provided by the EEOC, the limitations period may be equitably tolled. *See, e.g.*, *Walton v. Guidant Sales Corp.*, 417 F.Supp.2d 719, 721 (D.Md. 2006); *Kiah v. Am. Sugar Ref., Inc.*, No. WDQ-10-2663, 2011 WL 2462099, at *4 (D.Md. June 16, 2011). The Fourth

15

Circuit's decision in *Balazs*, however, indicates that, unlike Title VII's timeliness requirements, non-compliance with the statute's verification requirement cannot be excused through application of equitable doctrines, even where the EEOC may share blame for the non-compliance. In *Balazs*, the plaintiff's attorney had filed a letter on his behalf with the EEOC raising allegations of retaliation. *Balazs*, 32 F.3d at 154. The EEOC accepted the letter, assigned it a charge number, and then, approximately two months later, issued the plaintiff a right-to-sue notice. After the plaintiff filed suit in federal district court, the employer moved to dismiss based on lack of verification. Subsequently, the plaintiff filed a new, verified charge with the EEOC and also submitted affidavits averring (1) that the statements in his attorney's earlier letter were true and accurate; and (2) that an EEOC officer had informed him that the letter was a "sufficient filing of a charge of discrimination." *Id.* at 155-56. On appeal after the district court granted the employer's motion to dismiss, the plaintiff argued that a charge of discrimination does not require verification but that, in any event, the actions he took after filing his lawsuit cured any verification deficiency. *Id.* at 156.

The Fourth Circuit rejected both arguments. First, the court reaffirmed that "the filing of a sworn charge of

discrimination with the EEOC is a mandatory prerequisite" to bringing suit under Title VII. *Balazs*, 32 F.3d at 156. Second, the court held that, although a verification deficiency can be cured through amendment pursuant to 29 C.F.R. § 1601.12(b), the issuance of a right-to-sue letter by the EEOC functions as a cut-off date for amendments because, at that point, "there is no longer a charge pending before the EEOC which is capable of being amended." *Id.* at 157. The court reasoned that, because the EEOC does not typically require a response from an employer until a charge is verified, an employer is clearly prejudiced where it is served with a lawsuit based on an unverified charge because – at that point – the employer *has* to respond, even though it was never afforded the chance to "engage in efforts at conciliation as contemplated by [Title VII's statutory scheme]." *Id.* at 158; *cf. Edelman*, 535 U.S. at 113 (explaining that the verification requirement "protect[s] employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury").

Although the *Balazs* court did not expressly state that the verification requirement is jurisdictional in nature, its reasoning forecloses the possibility that Plaintiff's non-compliance could be excused under the circumstances presented

17

here.[5] As noted, the EEOC alerted the County that Plaintiff had filed a "minimally sufficient charge of discrimination," but did not forward a copy of her filing and further advised that the

---

[5] By contrast, the United States Court of Appeals for the Third Circuit has specifically held that non-compliance with Title VII's verification requirement is not an "inflexible bar to suit." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 262-65 (3d Cir. 2006); *see also Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 79 (5th Cir. 1982). The *Buck* court observed that the provisions of Title VII that vest district courts with jurisdiction, 42 U.S.C. §§ 2000e-5(e)-(f), do not specifically limit jurisdiction to cases where there has been a properly verified charge. *Buck*, 452 F.3d at 262-63. Rather, like Title VII's timeliness requirements, the verification requirement is an "'entirely separate provision [that] does not speak in jurisdictional terms'" and "should be subject to waiver when equity so requires." *Id.* (quoting *Zipes*, 455 U.S. at 394). Ultimately, however, *Buck* appears to be consistent with the reasoning of the Fourth Circuit in *Balazs*. In *Buck*, the plaintiff's attorney had filed two intake questionnaires and a formal charge on her behalf, but the plaintiff herself had not signed any of the documents. *Id.* at 260-61. Despite the clear lack of verification, the Third Circuit held that the requirement should be waived in the circumstances presented. The critical fact for the *Buck* court was that, during the pendency of the EEOC proceedings, the plaintiff's employer had received a copy of the unsworn charge and responded to it on the merits at the administrative level without raising a lack-of-verification defense, despite having adequate information to do so. The Third Circuit held that it would be inequitable and inconsistent with the remedial purposes of Title VII to allow the employer to raise the defense for the first time before the district court. The *Buck* court cautioned that the waiver rule it announced is one that will apply only in "the most unusual cases," given that the EEOC's general policy is to "look[] out for the employer's interest by refusing to call for any response to an otherwise sufficient complaint until the verification has been supplied." *Id.* at 265 (internal quotation marks omitted). Thus, even if the Fourth Circuit agreed with the Third Circuit that verification is not a jurisdictional requirement, the narrow rule announced by *Buck* likely would not apply here, given that the County never filed a substantive response before the EEOC.

County did not need to take any action until it received a perfected charge. (*See* ECF No. 17-5, Jackson Aff.; ECF No. 17-4, at 3). Thus, as in *Balazs*, waiving verification in these circumstances would directly undermine the requirement's purpose, as it would force the County to defend Plaintiff's claim on the merits in federal court without having been afforded the opportunity to utilize the less expensive and less burdensome conciliation mechanisms available at the administrative level.

Of course, if Plaintiff's version of events is credited, the opposite result (*i.e.*, dismissing her claims for lack of subject matter jurisdiction) might be somewhat unfair, if she pursued her claim diligently and relied on the EEOC's representations that she would receive a formal charge for review and signing. In *Balazs*, however, the Fourth Circuit did not appear to give any effect to the plaintiff's allegations that the EEOC had misled him into believing that his unsworn letter satisfied his exhaustion requirements. Thus, to the extent that Plaintiff's opposition could be construed as raising an equitable argument, it must be rejected under existing Fourth Circuit precedent.

Accordingly, because Plaintiff has not met her burden of establishing that she exhausted her administrative remedies, her amended complaint will be dismissed for lack of subject matter

jurisdiction, and Defendants' alternative arguments regarding the merits of her retaliation claim will not be reached.

**IV. Conclusion**

For the foregoing reasons, the motion to dismiss filed by Defendants Prince George's County, Rushern Baker, and Pamela B. Creekmur, will be granted, and Plaintiff Rose Merchant's amended complaint will be dismissed for lack of subject matter jurisdiction. A separate Order will follow.

```
            /s/
DEBORAH K. CHASANOW
United States District Judge
```